IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

DOUGLAS R. DAVIS, )
 )
        Plaintiff, )
 )
        v. ) Case No. CIV-13-168-SPS
 )
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
 )
        Defendant. )

## OPINION AND ORDER

The claimant Douglas R. Davis requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1]Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born October 18, 1966, and was forty-five years old at the time of the administrative hearing (Tr. 351). He completed ninth grade, and has worked as a tank truck driver and semi truck driver (Tr. 27, 352). The claimant alleges that he has been unable to work since August 14, 2008, due to a back injury, diabetes, depression, and high blood pressure (Tr. 101).

**Procedural History**

On July 16, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Charles Headrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 23, 2011 (Tr. 14-28). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he could lift 20 pounds occasionally or 10 pounds frequently and stand/walk/sit for 6 hours in an 8-hour workday, but that he

could only occasionally climb, balance, stoop, kneel, crouch, and crawl (Tr. 18). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, bottling line attendant, fruit cutter, and screw eye assembler (Tr. 28).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly consider his medically determinable mental impairment of depression, (ii) by failing to properly account for his obesity, and (iii) by failing to perform a proper credibility analysis. In support of his third contention, the claimant asserts that the ALJ did not properly account for his pain. The Court finds the claimant's third contention persuasive.

The claimant had the severe impairments of status post lumbar fusion and diabetes mellitus, as well as the nonsevere medically determinable impairment of adjustment disorder with depressed mood (Tr. 16). On April 16, 2008, the claimant injured his back at work. He sought treatment, and an MRI revealed minimal bulging at the L5-S1 disc. Dr. Allan Fielding assessed him with a lumbar strain (Tr. 136-137). He went to a number of physical therapy sessions, and ended with a full duty work release on June 18, 2008 (Tr. 138-150). On August 1, 2008, the claimant again injured his back, and was assessed with lumbar strain (Tr. 161). On August 21, 2008, an MRI of the lumbar spine revealed a tiny central disc protrusion that did not contact the thecal sac or nerve roots and did not cause significant stenosis at L5-S1 (Tr. 164-165). That same day he was given a lifting maximum of 35 pounds, and a push/pull maximum of 70 pounds, or 80 pounds on rollers (Tr. 162). He continued to report back pain and underwent three epidural steroid

injections from March 16, 2009 through April 20, 2009 (Tr. 175-187). On June 10, 2009, a lumbar provocative discogram reproduced the claimant's pain exactly at the L5-S1, and revealed that the disc was degenerated with radial fissuring extending to the outer annular edge (Tr. 191, 193). He then underwent a lumbar decompressive laminectomy, decompressive foraminotomy and right-sided L5-S1 diskectomy, along with a bilateral lateral fusion at L5-S1 on July 28, 2009 (Tr. 196). Four months out from the procedure, his surgeon indicated that he would be releasing the claimant and that the claimant had approached maximum medical improvement, but that as of December 7, 2009, he remained temporarily totally disabled (Tr. 229).

Dr. Kenneth Trinidad examined and treated the claimant in conjunction with his worker's compensation claim, between 2008 and 2010. On October 7, 2008, Dr. Trinidad indicated that the claimant had not achieved maximum medical recovery and was temporarily totally disabled from April 14, 2008 through June 2008, and from August 1, 2008 through an indefinite period of time in the future (Tr. 263). On April 29, 2010, he evaluated the claimant's impairment for a rating, finding that he had a 20% partial permanent impairment due to range of motion abnormalities of the lumbar spine, a 12% impairment due to L5-S1 fusion, an 8% impairment due to lumbar disc injection, and an 11% impairment due to right leg radiculopathy, resulting in a 51% permanent partial impairment to the whole man, as well as a 15% permanent partial impairment to the whole man as a result of psychological overlay (Tr. 260). On September 22, 2010, Dr. Trinidad conducted another physical examination and reviewed the available medical records. Upon reevaluation, he stated that "the combination of his work-related injuries

are such that they would give rise to a material increase in total body impairment that would render him 100 percent permanently and totally disabled on an economic basis" (Tr. 289-290).

A November 2010 physical RFC assessment completed by a state reviewing physician found the claimant could perform light work and had occasional postural limitations (Tr. 307-308). In the "explanation" section, Dr. J. Marks-Snelling recited evidence that the claimant had positive straight-leg raising tests with Dr. Trinidad, and that he had weakness in the right leg, as well as difficulty walking and standing for long periods of time, but did not discuss Dr. Trinidad's finding that the claimant was disabled (Tr. 307-308).

Dr. C. Scott Anthony also examined the claimant in relation to his worker's compensation claim and for pain management. On January 5, 2011, he noted the claimant continued to have lower back pain and a vocational assessment had found him not a candidate for job training (Tr. 318). He noted that activities requiring walking, sitting, standing, twisting, or bending would exacerbate his symptoms, that he had a reduced range of motion, that straight leg raising tests were negative, and that elimination of pain was not a reasonable goal but reduction in pain was (Tr. 318-319). The claimant returned to Dr. Anthony on April 19, 2011, and noted that medications had allowed the claimant to "become more active," but that he was still using a cane to ambulate (Tr. 316). Also, he noted that the increased activity had resulted in mild increased leg pain, as well as numbness and tingling of the legs (Tr. 316).

At the administrative hearing, the claimant testified about his back pain that he had not achieved a good result from his lumbar fusion, and that he still has severe pain where the hardware was located (Tr. 355-356). He stated that walking, sitting, and standing exacerbate his pain, and that he uses a cane to get around (Tr. 357). He stated that the pain affects his legs and creates numbness down to his knees but mainly affects his right leg and that his right leg often feels weak (Tr. 359, 361).

In his written opinion, the ALJ summarized the claimant's testimony as well as the medical record. As to Dr. Trinidad's opinion as to the claimant being disabled, the ALJ assigned it little weight because "definitions of disability are not the same in all government and private disability programs" (Tr. 25). He rejected the claimant's surgeon's opinion that the claimant was temporarily totally disabled because the surgeon also noted that the claimant was healing and progressing (Tr. 23-24). He further rejected the opinion as going to a province reserved to the ALJ and rejected it because his opinion was inconsistent with the opinion of the state reviewing physicians (Tr. 24). The ALJ then discredited the claimant's testimony and found him not disabled.

Although the ALJ found the claimant had several severe impairments, *i. e.*, status post lumbar fusion and diabetes mellitus, he spent a great deal of time discrediting evidence related to these impairments (Tr. 18-27). In fact, the ALJ devoted a great deal of time at step four to discrediting the physician's opinions as well as the claimant's own complaints of back pain. An explanation should be provided when, as here, an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th

Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. The ALJ should have explained why the claimant's severe impairments did not call for corresponding physical limitations related to his back, lower extremity, migraines, and daytime sleepiness problems in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984). Additionally, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing his RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot

conclude that the Commissioner applied the correct legal standards[.]"). *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Gtotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error.").

The claimant also argues that the ALJ improperly disregarded his pain. In this regard, despite finding the claimant suffered from a severe pain-inducing impairment, the ALJ *failed to evaluate or even mention* the effect of these pain-inducing impairments upon the claimant's RFC. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson*, 987 F.3d at 1490-91*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). Because there was objective evidence that the claimant had a pain-producing impairment, *i. e.*, a back impairment, the ALJ was required to consider the claimant's pain and the extent to which it was disabling. And because the ALJ found that the claimant's status post lumbar fusion was a severe impairment at step two, *i. e.*, having

more than a minimal effect on her basic work activities, it is "impossible to conclude at step four that h[is] pain was insignificant." *Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003); *see also Duncan v. Apfel*, 1998 WL 544353, at *2 (10th Cir. Aug. 26, 1998) ("We note the inconsistency of finding that a pain syndrome is severe at step two and insignificant at step five.").

The ALJ's treatment of the claimant's disability rating was likewise deficient. First, the ALJ simply stated that the finding of disability went to an issue reserved to the Commissioner but did not explain why it was not persuasive. *Baca v. Department of Health & Human Services*, 5 F.3d 476, 480 (10th Cir. 1993) ("'Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered.'"), *quoting Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979). *See also Kanelakos v. Astrue*, 249 Fed. Appx. 6, 8 (10th Cir. 2007) ("[T]he ALJ mentioned the VA rating and appropriately stated that the SSA and VA standards differ. But he completely 'fail[ed] to discuss the significance of the VA's disability evaluation.'") [unpublished opinion], *quoting Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005) ("Although another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive."), *citing Baca*, 5 F.3d at 480. This is particularly important where, as here, there were numerous opinions from physicians as to the claimant's disability, but the ALJ found them unpersuasive in light of state reviewing opinions that did not even acknowledge those findings.

Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2014.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**